### WARD v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department.  May 3, 1907.)

1. STREET RAILWAYS—NEGLIGENCE—CROSSING ACCIDENTS—EVIDENCE.
　　In an action against a street railway for injuries to plaintiff's intestate, received in a collision between an automobile in which intestate was riding and one of defendant's cars, evidence *held* sufficient to warrant a finding of negligence on defendant's part.

　　[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Street Railroads, § 246.]

2. SAME—CONTRIBUTORY NEGLIGENCE—SUBMISSION TO JURY.
　　In an action against a street railway for injuries to plaintiff's intestate, received in a collision between an automobile in which intestate was

riding and one of defendant's cars, evidence *held* sufficient to go to the jury on the question of intestate's contributory negligence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Street Railroads, §§ 255–257.]

**3.** NEGLIGENCE—IMPUTED NEGLIGENCE—NEGLIGENCE OF DRIVER.
   Where plaintiff's intestate, while riding as a mere passenger in an automobile and having nothing to do with the management or control of the machine, was injured in a collision between the machine and defendant's street car, he was not chargeable with the negligence of the driver of the machine.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Negligence, § 147.]

Appeal from Special Term, Kings County.

On reargument. Affirmed.

For former report, see 100 N. Y. Supp. 671, 115 App. Div. 104.

Argued before HIRSCHBERG, P. J., and JENKS, HOOKER, GAYNOR, and RICH, JJ.

I. R. Oeland, for appellant.

George V. Brower, for respondent.

RICH, J. When this appeal was before us at the June, 1906, term (115 App. Div. 104, 100 N. Y. Supp. 671) we did not have the brief of the learned counsel for the respondent before us. A careful reconsideration of the questions involved satisfies us that a different disposition ought to have been made of the appeal, and that the judgment must be affirmed. The action was brought to recover damages for personal injuries sustained by the death of plaintiff's intestate, through the alleged negligence of the defendant in the operation of one of its motor trains, which collided with the automobile in which the deceased was riding at a point where its track crosses Avenue D in the borough of Brooklyn. The deceased was in the employ of the John S. Loomis Company as a general all-around man. On the day of the accident, Mr. Guy Loomis—a member of said company—had business in Flatbush, and asked the deceased to accompany him in his automobile. Plaintiff's intestate knew nothing about an automobile or its management, and had nothing to do with the operation of the machine on the day in question. Loomis had had considerable experience in operating an automobile, and had used one frequently in traveling in the vicinity of Brooklyn on the business of his company. They proceeded in the automobile to Flatbush, where Loomis transacted some business, after which they passed along Ocean avenue to Avenue D, into which they turned, going west.

Between East Fifteenth and East Sixteenth streets the tracks of the defendant's road cross Avenue D at grade. The distance from East Sixteenth street to the railroad tracks is 161 feet 1 inch. The roadway of Avenue D east of Sixteenth street was asphalt, and west of it to the tracks was a dirt road, rough and, as the evidence tends to show, not in good condition. The surface of this dirt road was 12 inches lower on the day of the accident than when the conditions existed testified to by the engineers who made the surveys and maps, as to distances at which a car on the tracks could be seen from Avenue D between East Sixteenth street and the crossing. On the south side of said avenue, 20 feet south of the curb line, was a hedge of the

average height of 3 feet above the curb line and 4½ feet above the level of the surface of the roadway, commencing about 35 feet west of East Sixteenth street and extending to a point 15 feet east of the east rail of the tracks. Back of this hedge, and 29 feet from the south curb of Avenue D, commencing at a point about 30 feet from the east rail of the track, was a board sign extending east, parallel with the avenue, 16 feet 1 inch, 9 feet 2 inches high. Commencing at the westerly end of this hedge, at a point about 15 feet from the east rail of said tracks, was another hedge of the average height of 6 feet (in which grew a row of trees about 20 feet apart, and in which was placed a number of telephone or telegraph poles) extending south, parallel with the tracks, a distance of over 360 feet. East of this hedge, and at a distance of approximately 45 feet from the east rail of the tracks, were four dwelling houses fronting on East Sixteenth street; the one nearest Avenue D being about 85 feet distant therefrom. It appears that from the intersection of the west line of East Sixteenth street with the south line of Avenue D the view was cut off by this house to such an extent that it was impossible to see down the track a greater distance than 160 feet, and, while the view as they approached the crossing continued to enlarge from this point, a view of the train approaching was obstructed. Immediately on passing this house, the sign referred to for a distance of 16 feet interfered with and limited the view beyond a point about 100 feet south of the crossing; the traveler then being within 35 feet of the tracks. From this point a view of the tracks was cut off by the hedges until the traveler was within 15 feet of the crossing; the view being more interfered with and cut off as a person drew nearer to the tracks by the greater density of the hedge running north and south.

Loomis and the deceased approached this crossing at the rate of 6 miles an hour; the automobile being driven on the south side of the center of the avenue, to avoid the broken stone with which the surface of the north side was covered. At the same time one of defendant's trains, composed of three cars, was approaching the crossing from the south at a rate of 18 miles an hour. Loomis says that both plaintiff's intestate and he were "watching out." When the automobile reached the point between the west side of the house and the east end of the sign, where to some extent a view could be had of the track south of the crossing, Loomis looked and saw no train within the range of his vision. At that time the train was at Ditmas avenue, about 140 feet south of the south line of Avenue D. One Burke, who was a passenger on the train, testified that when it was at Ditmas avenue (one car having crossed it) he saw the hats of Loomis and the deceased at a point between the house and sign. The hedges cut off his view, so he could not see the automobile or any part of their persons. He was not able to see them again, because of the hedges and other obstructions, until the automobile emerged from behind the west end of the east and west hedge, and it was then within 15 feet of the tracks. The motorman testified that he did not see the automobile until the train was within about 60 feet of the crossing, and that at that time the automobile was 30 or 35 feet east of the tracks. As soon as the automobile uncovered the hedge, Loomis looked first to

the north and then to the south, and discovered the approaching train then, as he says, only 15 or 20 feet away. It being impossible, as he believed, to turn the machine around or to stop it in time to avoid a collision, he attempted to increase his speed to cross ahead of the train, which, as he testifies, was his only possible chance to escape. The train collided with the automobile upon the crossing, and plaintiff's intestate was killed.

It is evident that the motorman's estimate of the distance that his train and the automobile (when he first saw it) were from the crossing is erroneous. The train was running at the rate of 27 feet, and the automobile at the rate of 8⅔ feet, a second. Had the automobile been 30 feet from the crossing when the train was 60 feet distant from it, the train would have crossed Avenue D ahead of the automobile and without collision. But five seconds intervened between the time Loomis looked to the south, when he was between the house and sign, and the time when the automobile reached the crossing, during which time the train passed over the 135 feet between Ditmas avenue and the crossing, at which point the collision occurred. The crossing was dangerous and unprotected. Loomis, who was listening for any noise or signal, testified that none was given. He said that, had a signal been given at any time before he was within 15 feet of the track, he could have stopped the automobile and avoided a collision. Because no signal was given, he testified that he thought "things were all right." Nothing was said to Loomis by the deceased indicating that he had seen or discovered the approach of the train. Upon these facts the jury were warranted in finding negligence on the part of the defendant. Although the evidence as to the degree of care exercised by plaintiff's intestate is somewhat meager, there is some evidence in the case of the exercise of care on his part, which, with the existing conditions established, was sufficient to make his negligence a question for the jury. He was a mere passenger, and had nothing to do with the management or control of the machine; and, even assuming that Loomis was negligent, he was not chargeable with it. The jury have resolved the questions submitted to them in favor of the plaintiff, upon evidence sufficient to sustain their conclusions.

The judgment and order must therefore be affirmed, with costs.