### LOOMIS v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. June 4, 1909.)

STREET RAILROADS (§ 117*)—CONTRIBUTORY NEGLIGENCE—CROSSING ACCIDENT—QUESTION FOR JURY.

In an action against a street railway company for injuries to plaintiff in a collision between an automobile and one of defendant's trains at a street crossing, evidence *held* sufficient to entitle plaintiff to go to the jury on the question of his contributory negligence.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 117.*]

Gaynor, J., dissenting.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, Kings County.

Action by Guy Loomis against the Brooklyn Heights Railroad Company. From an order granting a nonsuit at the close of plaintiff's case, and from an order denying his motion for a new trial, he appeals. Reversed.

Argued before HIRSCHBERG, P. J., and JENKS, GAYNOR, RICH, and MILLER, JJ.

George V. Brower, for appellant.

D. A. Marsh, for respondent.

MILLER, J. This is a negligence suit, growing out of a collision between one of the defendant's electric trains and an automobile being driven by the plaintiff, at a crossing at Avenue D, in the borough of Brooklyn, between East Fifteenth and Sixteenth streets. The plaintiff was proceeding westerly at not more than 6 miles an hour, and was struck by a three-car electric train from the south, running under full headway and without giving any signal of its approach to the crossing. The rear end of the train, when it was stopped, was about 150 feet from the point of the collision. As the plaintiff approached the crossing, he had a view toward the south between a building and a sign, varying with the distance from the crossing. For instance, at 76 feet, on the curb line, there was an open space between the building and the sign, admitting of a view over the tracks between two points, 90 and 236 feet, respectively, south of the crossing; at 66 feet from the crossing, the view over the tracks was confined between two points, 130 and 325 feet, respectively, from the crossing; at 56 feet, the range was between two points, 275 and 555 feet, respectively, south of the crossing. Parallel with the tracks, and 15 feet east of the first rail, was a privet hedge about 6 feet high, and a row of trees and telegraph and trolley poles, within a few feet of each other.. The east end of the sign and the northwest corner of the building were each about 46 feet from the track; but a view was permitted between them at a constantly changing angle, for the reason that the building was something over 50 feet south of the sign.

The plaintiff swears that he looked constantly to the south during the entire distance, where he had a view between the house and the sign, and saw no train. Over that space the angle of vision was doubtless such that he could have seen the top of a train through the branches of the trees along the track, had one been within the range of vision. The west end of the sign was about 30 feet from the east rail; but, upon passing the sign, the plaintiff was in a more direct line with the hedge, the trees, and the poles. The center of the hedge (its branches extended 2 or 3 feet in each direction) was 15 feet from the east rail. . The front of the automobile was 5 feet ahead of the seat, and the roadway of Avenue D was from 1 to 2 feet lower than the bottom of the hedge. The plaintiff testified that, upon passing the space between the building and the sign, he then looked to the north until just upon the track, when he again looked to the south and saw the train almost upon him. He also testified that he was listening for

a train the entire distance. The roadway was rough, and on the north side there were piles of stones. The learned trial justice calculated that, when the plaintiff was 46 feet from the east rail, he could see down the track 450 feet, and that the train must have been in sight, unless it was going 60 miles an hour, which was thought to be impossible, as the train had stopped at a station 1,000 feet south of the crossing. There is nothing in the record to show that an electric train could not get up a speed of 60 miles an hour in going 500 or 600 feet; and I do not think that could be held to be an impossibility as a matter of law. Moreover, the calculation entirely overlooked the possibility of constantly accelerating speed until the crossing was reached. Although the view between the building and the sign was more or less 'obstructed, the plaintiff was probably required to look more intently· for that reason; and, if the evidence established the fact that the train was then within the range of· his vision, it might be held as a matter of law that he was guilty of contributory negligence, though he testified that he looked constantly while passing the open space and did not see the train.

The train threw the automobile about 40 feet, and its occupants a much greater distance. The witnesses all say that it was going at a high rate of speed. I do not think that it is at all improbable that it was running at the rate of 60 miles an hour. At any rate, upon this record it could not be held as a matter of law that the train was within sight when the plaintiff says he looked, but did not see it. In order to hold that statement to be incredible as a matter of law, the fact must be established that the plaintiff must have seen it, had he looked. The learned trial justice was also of the opinion that the plaintiff might have seen the train after passing the sign. It appears from the record that the plaintiff's eyes must have been about 2 feet lower than the top of the privet hedge. After passing the sign, he was close to the hedge, and no calculation has been made to show how high the line of vision was above the tracks; but a photograph is in the record, and shows that the view was practically, if not completely, obscured until the plaintiff had passed beyond the hedge, when the front of his automobile must have been within 8 feet of the nearest rail. I think it could not be held as matter of law that the train was in sight when he says he looked, or that he could have seen the train, had he looked between the sign and the hedge. The plaintiff looked constantly to the south, where he had an unobscured view. When his view to the south was obstructed, he looked to the north, and he says that he listened constantly. When he had passed beyond the hedge, he was practically upon the track, and was not chargeable with negligence for anything he did in an emergency. He had to attend to the running of the machine over a rough roadway. In view of the proof of obstructions, the plaintiff's testimony was not incredible as matter of law, and, if believed by the jury, presented a question of fact; whether he exercised reasonable care.

· The plaintiff's companion was killed. A judgment in favor of his estate was affirmed. Ward v. Brooklyn Heights Railroad Company,

119 App. Div. 487, 104 N. Y. Supp. 95, affirmed 190 N. Y. 559, 83 N. E. 1134.

The judgment is reversed.

Judgment and order reversed, and new trial granted; costs to abide the event. HIRSCHBERG, P. J., and JENKS and RICH, JJ., concur. GAYNOR, J., dissents.